**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF FRANK CURCIO | Civil Action No. 16-3185 (CCC)<br><br>**REPORT & RECOMMENDATION** |

**FALK, U.S.M.J.**

This is a probate case with a confusing history in New Jersey state court. After extensive proceedings in state probate court, the decedent's wife, Maida Lauzardo, removed the case to this Court in July 2016, claiming ERISA-related federal question jurisdiction based on certain retirement accounts being a part of the estate, and by referring vaguely to diversity jurisdiction. Before the Court is a motion filed by one of the decedent's daughters, Christina Bennett, to remand the case to state court. [ECF No. 2.] The motion is opposed. In addition to and separate from the motion to remand, the papers submitted have caused the Court to *sua sponte* question subject matter jurisdiction, which is not only permissible but required. See, e.g., Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995). The ineludible conclusion is that this case belongs in state court. Therefore, it is respectfully recommended that the motion to

remand be **granted**.

## BACKGROUND[1]

Frank Curcio, the decedent, died on November 24, 2013.

On April 24, 2014, Frank's son, Michael Curcio, filed an Order to Show Cause in Passaic County Superior Court, Probate Part, naming Frank's third wife, Maida Lauzardo, as a defendant, and seeking, among other things, to vacate Frank's 2013 will in favor of a prior 2004 will and remove Maida as executor.

Thereafter, Maida entered into mediation with Frank's children (Michael, Christina, and Brenda Hutsebaut) before retired New Jersey Superior Court Judge Daniel P. Mecca.[2] The mediation was successful and an agreement purporting to resolve "all issues relating to the death of Frank Curcio" was reached. As part of the disbursements resulting from the mediation agreement, Maida apparently received approximately $2.5 million from Frank's retirement funds. On October 22, 2014, a stipulation of dismissal was filed.

In September 2015, Michael filed an amended verified complaint, in the same case with the same docket number, apparently requesting that the Superior Court order Maida to pay all of the decedent's estate taxes. Maida opposed the motion, claiming that her

---

[1] The background is drawn from the parties' papers. Citations are omitted. Although limited to what is necessary to decide the motion, some detail is provided to show how state- and probate-related this case actually is.

[2] It is not clear whether Frank's children were ever formally made parties to the case.

step-children had agreed to pay taxes relating to the estate.

On January 7, 2016, the Honorable Margaret Mary McVeigh, J.S.C., entered an Order regarding payment of the estate taxes.

On January 27, 2016, Christina filed a motion for reconsideration, requesting that Maida be compelled to pay 100% of the estate tax. Christina apparently argued that she would not have settled the case had she known that she had to pay estate taxes.

On May 2, 2016, Judge McVeigh entered an Order that <u>vacated</u> the settlement agreement in its entirety because a "material fact" relating to the payment of taxes—specifically, "Maida's immigration status"—"was either concealed or omitted" during negotiation of the agreement. (Letter Opinion dated May 2, 2016 at 2; ECF No. 5-5.) Judge McVeigh further found that "[a]ll parties were represented by counsel and all parties entered into the settlement agreement. Counsel for Maida should have been aware of Maida's immigration status. Despite this, Maida did not disclose her immigration status, which is a critical, material fact for planning and determining the estate's tax liabilities." (<u>Id.</u>) Judge McVeigh vacated the settlement; ordered the parties to mediation within 30 days; and set a trial date of July 11, 2016.[3]

On June 2, 2016, Maida removed the action to this Court. As best as the Court can tell, Maida is attempting to remove the 2014 Order to Show Cause and Complaint and the

---

[3] Maida claims that she "spent a significant portion" of decedent's retirement benefits, including the purchase of real estate in Florida. The Court has no opinion on the ramifications of vacating the settlement agreement and the fact that a portion of the money has apparently been spent. That is an issue that, on remand, can be explored between counsel, client, and the Superior Court.

2015 Amended Verified Complaint.  The alleged basis for removal is that Judge McVeigh's Order has placed at issue something that was resolved as part of the 2014 settlement—i.e., who is entitled to the proceeds of Frank's retirement plans—which she contends is a federal issue.

On June 29, 2016, Christina, who is listed on the docket as an "Interested Party" filed a motion to remand, arguing the case was removed long after the 30-day statutory deadline and that the case contains no federal claims.

Maida has opposed remand, contending that because the entire settlement agreement has been vacated, there is an issue of who is entitled to the proceeds of Frank's retirement plans, allegedly governed by ERISA, creating federal jurisdiction.  Maida also refers to diversity jurisdiction but appears to have conflated subject matter jurisdiction and personal jurisdiction, claiming that the Court has both "subject matter jurisdiction and diversity jurisdiction over this case," and that there is "personal jurisdiction based on diversity of citizenship."  (Pl.'s Br. 5, 6.)[4]

For the reasons that follow, there is absolutely no basis for this case to have been removed to federal court and no reason why it should stay here.  It is a quintessential state probate matter that belongs in state court.  The case should be remanded.

---

[4] Personal jurisdiction refers to jurisdiction over the individual parties to a dispute; subject matter jurisdiction refers to the authority of a federal court to hear the particulars of that dispute.  See, e.g., Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinese, 456 U.S. 694, 701 (1982).

**DECISION**

1. **Burden in Removal Case**

The federal removal statute provides that "[e]xcept as otherwise provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007). Removal is strictly construed and all doubts are resolved in favor of remand. See Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004).

2. **The Removal is Out of Time**

Pursuant to 28 U.S.C. § 1446(b), a party must file for an action's removal within 30 days of receiving a pleading containing a removable claim. See 28 U.S.C. § 1446(b)(1); Farina v. Nokia, 625 F.3d 97, 113 (3d Cir. 2010). As cases within this district have repeatedly held, "it is well-established that the thirty day period for removal is mandatory and cannot be extended by the court." Galvanek v. AT&T, Inc., No. 07-2759, 2007 WL 3256701, at *2 (D.N.J. Nov. 5, 2007); see also Chamberlin v. Township of Saddlebrook, No. 15-8366, 2016 WL 2643100, at *2 (D.N.J. Apr. 19, 2016) (collecting extensive cases so holding). "When a notice of removal is filed more than thirty days after a removable pleading was served, the remand is defective and remand is warranted." See id. (citing numerous cases; remanding for untimely removal alone). The concept of

the 30-day rule is to "prescribe a uniform time frame, at the beginning of immediately removable actions, within which removal will be effected. The goal is early resolution of the court system in which the case will be heard." Charles A. Wright, et al., 14C <u>Federal Practice and Procedure</u> § 3731.

Here, it is not even clear precisely what complaint Maida is attempting to remove—the 2014 original probate complaint, or the 2015 amended complaint that was filed, in the same docket, as part of a dispute over apportionment of estate taxes. Either way, it makes no difference, as the removal is grossly out of time.

Even assuming the retirement plans at issue (which have not been provided to the Court) are governed by ERISA (which Maida has not established), they were part of the initial complaint in this case and discussed and resolved, at least temporarily, as part of the settlement in 2014. Thus, even assuming the entitlement to these alleged "ERISA" benefits creates a federal claim, the time to remove the case was in 2014, not in June 2016.

Maida contends that the Judge McVeigh's May 2016 Order was when it "was first ascertained that this case is removable, since that was the first time the entire case was being re-opened by the Superior Court." This argument does not work: entitlement to benefits under the plans were part of the original dispute when it was filed in 2014 and resulted in a mediation. If the plans provided a basis for removal, the time to remove the case would have been in 2014 when a pleading was filed that placed the retirement plans in issue. Judge McVeigh's Order did not create a federal issue. Any issue existed, and could have been ascertained, in 2014. In short, Madia's attempted removal violates 28

U.S.C. 1446(b) and remand is appropriate on that basis alone.  See Chamberlin, 2016 WL 2643100, at *1-2.

**3.      No Federal Question Jurisdiction**

Pursuant to 28 U.S.C. § 1331, federal question jurisdiction can exist in basically three ways: (1) a pleading that contains an expressly pleaded federal claim, e.g., a claim under a federal statute such as 42 U.S.C. § 1983; (2) the complete preemption doctrine, which turns a state law claim into a federal one based on the subject matter involved, e.g., an attempt to plead as a state claim a purely federal issue (like patents), see, e.g., Vaden v. Discover Bank, 556 U.S. 49, 60 (2009); or (3) a narrow category of cases giving rise to what is colloquially referred to as *Grable* jurisdiction based on the Supreme Court's Opinion in Grable & Sons Metal Prods., Inc. v. Darue Mfg., 545 U.S. 308 (2005).  As the proponent of federal jurisdiction, Maida has selected and argued that *Grable* jurisdiction is present in this case.  (See Def.'s Br. 5-6; citing to and arguing *Grable*).  She is mistaken.

Grable jurisdiction refers to a body of law derived from the Supreme Court's Grable Opinion that provides that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Gunn v. Minton, 133 S. Ct. 1059, 1065 (2013).  Grable jurisdiction has been described as "narrow and unusual."  Brown v. Organon USA, Inc., No. 07-3092, 2008 WL 2625355, at *4 (D.N.J. June 27, 2008).

This is not a *Grable* case.  Maida cannot establish that there is a substantial and

7

dispositive question of federal law embedded as a element of a state law claim in the complaint in this case.  In fact, she does not refer to any individual state law claim in the complaint at all; instead, she simply raises the presence of allegedly federal benefit plans as part of a larger estate.  That is not a Grable claim.[5]  Regardless, Grable jurisdiction could not exist here because it would undoubtedly "disrupt the federal-state balance approved by Congress," by making routine probate and estate matters federal litigations.  That is not the contemplation of Grable.  Indeed, the United States Supreme Court has acknowledged the purely state nature of probate matters:

> **[t]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court**.

Marshall v. Marshall, 547 U.S. 293, 312 (2006) (emphasis added).

State probate matters are not completely preempted, *Grable*-based, or federal in any other way.  As Marshall makes clear, probate matters like this one are for state courts.

**4.      No Diversity Jurisdiction**

Although it is unclear, Maida appears to mistakenly contend that the Court has diversity jurisdiction over the case.  Not correct.  At the time the matter was commenced

---

[5] Maida perhaps meant to argue complete preemption as opposed to *Grable*. However, the removing party has not remotely met her burden to demonstrate federal jurisdiction.  Indeed, the Court is not even able to assess whether the plans are, in fact, ERISA governed plans no matter what argument was made, as they were not provided to the Court.  But in all events, a complete preemption argument would also fail, as there is absolutely no basis to find that an entire probate matter or any aspect of it is preempted by federal law, which are state proceedings.  Cf. Marshall, 547 U.S. at 312.

in state court, Maida and all other parties involved were citizens of New Jersey. (See Opp'n Br. 2.) Maida claims, however, that she has since moved to Florida, creating diversity jurisdiction. (Defs.' Br. 6.) Diversity jurisdiction is determined at the time of initial filing—referred to as "the time of filing rule." Grupo Dataflux v. Atlas Global Grp, LP, 541 U.S. 567, 570 (2004). Subsequent change in the citizenship of the parties cannot retroactively create diversity jurisdiction. See id. ("The time-of-filing rule is what it is precisely because the facts determining jurisdiction are subject to change, and because constant litigation in response to that change would be wasteful."); see also Clements v. Sanofi-Aventis, Inc., No. 14-1423, 2016 WL 1298043, at *2 (D.N.J. Mar. 17, 2016). The parties were not diverse at the time of filing, and therefore, there is no diversity jurisdiction.

**5.     Any Right of Removal Was Waived**

As has already been explained, the removal was untimely and there is no federal question or diversity jurisdiction. In addition to those independent reasons for remand, there is another compelling reason to remand this case: Maida has waived any right of removal. In short, "a state court defendant may lose or waive the right to remove the case to a federal court by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court." Charles A. Wright, et al. Federal Practice & Procedure § 3721 (3d Ed. 2008); see also St. John v. Affinia Group, No. 09-2501, 2009 WL 1586503, at *3 (D.N.J. June 8, 2009). The policy grounds supporting waiver of the right to remove have been explained as follows:

> This court concludes that a defendant must not be allowed to test the waters in state court, and finding the temperature not to its liking, beat a swift retreat to federal court. Such behavior falls within the very definition of forum-shopping and is antithetical to federal-state court comity.

<u>JP Morgan Chase Bank, N.A. v. Smith</u>, No. 08-1457, 2008 WL 2943369, at * 1-2 (D.N.J. July 29, 2008) (quotation omitted).

This purely state law probate dispute was initially filed in 2014 in Superior Court. While the complete court record has not been attached to the removal papers, what has been submitted establishes that the case has an extensive history, including multiple complaints and answers filed, mediation, a settlement, motion practice, reconsideration motion practice, and even the setting of a trial date in state court. What has occurred here is far beyond "testing the waters" in state court; Maida filed pleadings, settled the case, litigated motions, and received an adverse ruling. Therefore, any conceivable right of removal (which never existed) has been waived.

## CONCLUSION

It is clear this case does not belong in federal court. It is a probate case with an extensive state court history. The removal of this case is grossly out of time, there is no federal question or diversity jurisdiction, and any right of removal was affirmatively waived. For those reasons, it is respectfully recommended that the motion to remand be **granted**.

                                                    s/Mark Falk
                                                    **MARK FALK**
                                                    **United States Magistrate Judge**

**DATED: November 3, 2016**